IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:22-CV-00375-M-RN

MECCA MCPHERSON,

    Plaintiff,

v.

MARTIN O'MALLEY,[1]
*Commissioner of Social Security*,

    Defendant.

ORDER

This matter comes before the court on the Memorandum and Recommendation ("Recommendation") issued by United States Magistrate Judge Robert T. Numbers, II [DE 20]. Judge Numbers recommends that this court deny Plaintiff's Motion for Judgment on the Pleadings [DE 14], grant Defendant's Motion for Summary Judgment [DE 18], and affirm the final decision of the Commissioner. Plaintiff timely filed objections to the Recommendation [DE 21]. After a de novo review in this case, the court finds that the Administrative Law Judge ("ALJ") made none of the errors reported by Plaintiff, overrules Plaintiff's objections, adopts the rationale of the Recommendation, and concurs in the Recommendation's recommended rulings.

I. **Standards of Review**

A magistrate judge's recommendation carries no presumptive weight. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023). The court "may accept, reject, or modify, in whole or in part,

---

[1] Since commencement of this action, Martin O'Malley has replaced Kilolo Kijakazi as Commissioner of Social Security and is automatically substituted as a party. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

the . . . recommendation[ ] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1).

Without timely objection, de novo review is unnecessary, and a district court need only check for clear error on the face of the record to accept the magistrate judge's recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing 28 U.S.C. § 636(b)(1)). In addition, under § 636(b)(1), any objections to a recommendation must be "specific and particularized" to facilitate district court review. *United States v. Midgette,* 478 F.3d 616, 621 (4th Cir. 2007). "[G]eneral and conclusory objections that do not direct the court to a specific error" in the Recommendation fall short of this standard. *See Stokes v. Berryhill*, 294 F. Supp. 3d 460, 462 (E.D.N.C. 2018) (quoting *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)).

A reviewing court must uphold a Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). The "substantial evidence" required is more than "a mere scintilla . . . but may be less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Although a court should not "reflexively rubber-stamp the ALJ's findings," a court reviewing for substantial evidence cannot "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment" for the ALJ's. *Arakas*, 983 F.3d at 95. Ultimately, the court's task consists of ensuring that the ALJ "'buil[t] an accurate and logical bridge' from the evidence to their conclusion." *Id.*; *see also Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997) (discussing that a court's review focuses on whether

the ALJ analyzed the relevant evidence and sufficiently explained his findings and rationale in crediting the evidence).

## II. Analysis

Plaintiff assigns error to two findings in the Recommendation. The court has reviewed the remainder of the Recommendation for clear error, and finds none. *Diamond*, 416 F.3d at 315.

### a. RFC and Medical Evidence

Plaintiff first contends that Judge Numbers erred because he did not find that the ALJ "cherrypick[ed]" certain facts from the medical evidence and disregarded other, relevant medical evidence. DE 21 at 2-3. Plaintiff's contention restates an argument she raised in her motion for judgment on the pleadings. *See* DE 15 at 10-13 (arguing that ALJ erred by "cherrypick[ing]" facts from record); DE 21 at 2 n.9 (cross-referencing DE 15 at 10-13). This objection, the substance of which almost exclusively addresses findings of the ALJ and only generally objects to a conclusion in the Recommendation, is just barely sufficient to trigger de novo review under § 636. In that regard, the court recognizes Fourth Circuit law which disavows the notion that a party's rehashing of an argument represents an improper objection. *Elijah*, 66 F.4th at 460 n.4.[2] On the other hand, a "party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of ***the true ground for the objection***." *Midgette*, 478 F.3d at 622 (emphasis added).

A general objection to a magistrate judge's conclusion is inadequate because it requires the "the district court [] to review every issue in the magistrate judge's proposed findings and recommendations." *Id.*; *accord Elijah*, 66 F.4th at 460 ("District courts are not expected to

---

[2] The court notes that *Elijah*, and the case on which it principally relied (*Martin v. Duffy*, 858 F.3d 239 (4th Cir. 2017)), both involved pro se plaintiffs. Plaintiff here is represented by counsel, so her objections do not receive the benefit of liberal construction.

3

relitigate entire cases to determine *the basis of a litigant's objection*.") (emphasis added). An objection should "articulate[] how [the party] believed the magistrate judge's reasoning was incorrect." *Weaver v. United States Postal Serv.*, No. 21-1157, 2024 WL 94298, at *3 (4th Cir. Jan. 9, 2024). Plaintiff's first objection largely fails to address Judge Numbers' reasoning. *See* DE 21 at 1-5 (mentioning Recommendation in one sentence but otherwise only discussing ALJ's findings).

Notwithstanding the foregoing, the court has reviewed de novo the portion of the Recommendation to which Plaintiff directed her first objection and concurs in the conclusion of the Recommendation.[3] Plaintiff has diagnoses for PTSD, depression, multiple personality, bipolar, and anxiety. DE 9 at 1193.[4] She reports myriad symptoms stemming from these diagnoses. *See id.* at 1193-94. In assessing Plaintiff's Residual Functional Capacity ("RFC"), the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [those] symptoms are not persuasive of disability based upon the medical and other evidence in the record." *Id.* at 1194.

Plaintiff asserts that the ALJ, in making this assessment, failed to consider certain record evidence indicating that Plaintiff had "issues with temper control." DE 21 at 2. As an initial matter, the court finds that this alleged failure is contradicted by the ALJ's statement that he did "consider[ ] all the evidence." DE 9 at 1187, 1193. "[A]bsent evidence to the contrary," a court should "take [the ALJ] at [his] word." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

In addition, the ALJ did explicitly consider substantial evidence in the record related to

---

[3] Given the current posture, the court assumes the parties' familiarity with the facts of this case. *See* DE 20 at 2-7 (recounting factual and procedural history).
[4] Pin cites to materials in the record will refer to the page numbers that appear in the footer appended to those materials upon their docketing in the CM/ECF system, and not to any internal pagination.

4

Plaintiff's issues with temper control. *E.g.*, DE 9 at 1200 (discussing medical examination which addressed "pattern of unstable and intense interpersonal relationships," "relationship issues with a co-worker," and "a recent incident of road rage"); *accord id.* at 1194 (recounting Plaintiff's testimony at 2019 hearing where she reported "difficulties interacting with others"). The ALJ also expressly considered Plaintiff's testimony that "she would get angry in response to stress." *Id.* The ALJ found this evidence only partially persuasive in part because it "appear[ed] to be primarily based on subjective reports." *Id.* at 1201. The ALJ also considered the foregoing evidence in the context of other mental health evidence, including "a benign mental status exam," *id.* at 1195, Plaintiff's testimony that "her VA mental health medications helped her with both sleep and her depression," *id.* at 1196, and a medical opinion that she could "relate appropriately to co-workers without . . . exhibiting behavioral extremes," *id.* at 1196-97. Plaintiff suggests the ALJ should have expressly considered more evidence relevant to temper control, but "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid*, 769 F.3d at 865.

Ultimately, the ALJ found that Plaintiff's RFC to perform light work "require[d] a goal-oriented job that primarily deals with ***things rather than people***, . . . no more than occasional social interaction as part of the job with co-workers and supervisors, [and] ***no work with the public*** as part of the job." *Id.* at 1192 (emphasis added). Each of Plaintiff's reported incidents of anger involved interactions with other people (her child's father, VA staff, a neighbor, a police officer). *See* DE 21 at 2-5. The ALJ's conclusion as to Plaintiff's RFC includes significant limitations on human interaction. That conclusion demonstrates that the ALJ gave due consideration to Plaintiff's reported issues with temper control. Plaintiff's first objection would have this court "re-weigh conflicting evidence" and "substitute its judgment" for the ALJ's. *Arakas*, 983 F.3d at

5

95. The court may not do so. The court therefore overrules Plaintiff's first objection and adopts the finding of the Recommendation on this issue.

### a. RFC and Vocationally Relevant Terms

The court also rejects Plaintiff's second objection. Plaintiff further contends that the Recommendation erred in not finding that the ALJ failed to resolve an apparent conflict between certain vocationally relevant terms in the RFC and the testimony of the vocational expert ("VE"). DE 21 at 5. Specifically, in assessing Plaintiff's RFC, the ALJ concluded that Plaintiff could not work in a setting that was "production-pace or quota-based; rather [Plaintiff] requires a goal-oriented job." DE 9 at 1192. At Plaintiff's 2022 hearing, the VE testified that, for goal-oriented jobs, "basically there's an amount of work that's expected for a person to complete each day," and that, "if an individual cannot . . . complete 90% or more of their work, they will not be able to maintain competitive employment." *Id.* at 1240 (internal comma omitted). According to Plaintiff, this testimony conflicts with the vocationally relevant terms in the RFC because it demonstrated that "a job can be both production-paced or quota based and goal-orientated." DE 21 at 6.

The court disagrees. Rather, the VE's testimony stands for the unremarkable proposition that goal-oriented jobs consist of subsidiary tasks, and that substantial completion of one's work is generally a prerequisite to retaining employment. *See* DE 9 at 1240; *accord Antonio P. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00062, 2021 WL 5768545, at *9 (D. Conn. Dec. 6, 2021) ("Common sense dictates that all jobs will require that certain duties be performed; if an employee does not perform his duties, he cannot keep the job. The requirement that the basic duties of a job be performed is not, however, the equivalent of a production quota."); *Francis v. Comm'r of Soc. Sec.*, No. 2:17-CV-1022, 2018 WL 4442596, at *5 (S.D. Ohio Sept. 18, 2018) (explaining that goal based work "is commonly understood to mean work measured by the end

6

result as contrasted with pace work"), *recommendation adopted*, No. 2:17-CV-1022, 2018 WL 4932081 (S.D. Ohio Oct. 11, 2018) *Martinez v. Berryhill*, No. 3:17-CV-186, 2018 WL 709971, at *4 (W.D.N.C. Feb. 5, 2018) (rejecting argument "that being involved with the production of any good in any way implies a production rate or pace"), *aff'd sub nom. Martinez v. Saul*, 776 F. App'x 175 (4th Cir. 2019). In his testimony, the VE adequately differentiated between a goal-oriented job that is comprised of subsidiary tasks, and a production-pace or quota-based job. *See* DE 9 at 1240 (explaining that employers of goal-oriented jobs are "more concerned about completion of the work ***versus was this completed between 9 and 10***, you know[,] did you get it done before you left the jobsite[?]") (emphasis added). This testimony clarifies that the flexibility provided to an employee of a goal-oriented job in ordering and scheduling subsidiary tasks is distinguishable from any flexibility afforded to an employee whose position is production-pace or quota-based. So, the court finds that there was no apparent conflict for the ALJ to resolve.

On this issue, Plaintiff cites *Kesha M. v. Kijakazi* as support, but *Kesha M.* addressed an ALJ's failure to contextualize a vocationally relevant term, not an ALJ's failure to reconcile an apparent conflict between a vocationally relevant term and VE testimony. *Kesha M. v. Kijakazi*, No. 2:20-CV-616, 2021 WL 5710834, at *7 (E.D. Va. Nov. 15, 2021), *recommendation adopted*, No. 2:20-CV-616, 2021 WL 5632581 (E.D. Va. Dec. 1, 2021). Unlike in *Kesha M.*, "here the ALJ provided significant context that enables the [c]ourt to understand the limits described in the RFC." *John S. v. Saul*, No. 1:20-CV-835, 2021 WL 1724930, at *4 (E.D. Va. Apr. 29, 2021). Cases involving apparent conflicts between vocational terminology and testimony further support the court's finding that there is no apparent conflict in this case. *E.g.*, *Thomas*, 916 F.3d at 314 (apparent conflict between "short, simple instructions" and "detailed but uninvolved written or oral instructions"); *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015) (apparent conflict

7

between RFC conclusion that claimant's "nondominant arm could only occasionally reach upward" with finding that he could perform occupation that required "*frequent* reaching as a requirement") (italics in original). For the foregoing reasons, the court rejects Plaintiff's second objection to the Recommendation.[5]

### III. Conclusion

This court's review of the ALJ's decision is confined to whether substantial evidence in the record, as it was reviewed by the ALJ, supports his decision and whether he applied correct legal standards. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). Even if other evidence exists that may support Plaintiff's position, the court is not permitted to reweigh the evidence or to substitute its own judgment for that of the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). In considering the entire record, and the evidence referenced herein, the court finds that Magistrate Judge Numbers correctly found that (1) the ALJ supported her RFC determination with substantial evidence and properly weighed the relevant medical evidence and (2) Plaintiff's argument about an alleged conflict between vocational terminology and testimony lacked merit.

Accordingly, the court ADOPTS the Recommendation [DE 20], (2) UPHOLDS the decision of the Commissioner of the Social Security Administration; (3) DENIES Plaintiff's

---

[5] Alternatively, assuming any conflict did exist here, it would most accurately be classified as an internal conflict in the VE's testimony. *See* DE 21 at 5-6 (quoting VE testimony for proposition that "a job can be both production-paced or quota based and goal-orientated"). Social Security Ruling 00-4p imposes an affirmative duty on ALJs to resolve apparent conflicts between vocational expert testimony and the Dictionary of Occupational Titles. *See Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704 at *2 (Dec. 4, 2000). This Ruling does not, however, "burden[] the ALJ with an independent, affirmative duty to identify and resolve ***all possible internal inconsistencies*** in the VE's testimony." *Wesley v. Kijakazi*, No. 1:20-CV-364, 2021 WL 4129234, at *6 (M.D.N.C. Sept. 9, 2021) (emphasis in original). A review of the 2022 transcript in this matter shows that, "despite having an opportunity for full cross-examination, Plaintiff's counsel neither identified the contradiction about which [s]he now complains nor asked the VE to resolve the contradiction on the record. Under such circumstances, Plaintiff has waived, in this [c]ourt, any challenge to the VE's testimony." *Id.* at *5 (internal quotation marks and citation omitted); *see also Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) (finding that "a claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections"); *Mark E. v. Kijakazi*, No. 8:20-CV-425, 2021 WL 4168590, at *9 (N.D.N.Y. Sept. 14, 2021) (holding that "failure to present an argument to the ALJ constitutes waiver of the right to raise it on appeal").

8

Motion for Judgment on the Pleadings [DE 14]; and (4) GRANTS Defendant's Motion for Summary Judgment [DE 18]. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant, forward a copy of this order to Plaintiff and all counsel of record, and close this case.

SO ORDERED this 28th day of February, 2024.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE